IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA DURHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 6627 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| THE LOAN STORE, INC., ALASKA ) | |
| SEABOARD PARTNERS, L.P., and SN ) | |
| SERVICING CORPORATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court are defendants The Loan Store, Alaska Seaboard Partners, L.P., and SN Servicing Corporation's ("Defendants") motions for summary judgment against plaintiff Brenda Durham ("Plaintiff"). For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**I. FACTS**

In March 1999, Brenda Durham ("Plaintiff"), who owned a home at 1326 E. 72th Street, Chicago Illinois, corresponded with Janice Caldwell, a Loan Store employee, to see whether Loan Store could assist her in obtaining a mortgage loan. The Loan Store is a Missouri corporation engaged in mortgage lending with the authority to transact business in Illinois. Plaintiff claims that she told Caldwell that she had at best a nominal income, consisting of

-1-

around $300.00 per month in public aid, $50.00 per month in child support, a food stamp allocation, and inconsistent and fluctuating money from babysitting. Plaintiff claims, and Loan Store disputes, that she told Caldwell that she could only pay $350 to $400 per month, and would have trouble producing fees up front. Loan Store claims Plaintiff said she could pay $500.00 per month. Caldwell prepared Plaintiff's paperwork for securing her loan.

After Plaintiff met with Caldwell, Plaintiff knowingly allowed a telephone service to be placed at her house under the name "Mary Wilson." Plaintiff knew that because her account with Ameritech was delinquent, she would not be able to obtain service under her real name and therefore used the fictitious name "Mary Wilson." Plaintiff claims that use of the fictitious name was at the instigation and procurement of Caldwell.

On May 25, 1999, Plaintiff attended the First Closing of a loan procured by Loan Store. Vernell Bradley, another Loan Store employee, was also present at the closing. At the First Closing, Plaintiff read her loan application and noticed that it misrepresented the amount of money she was making as well as the actual length of her employment. Although Plaintiff understood that the documents she was signing contained misrepresentations, she was reassured by Caldwell that she should " not worry" and "just sign." Plaintiff further claimed that The Loan Store hid from her several false documents that misrepresented her income and assets. Plaintiff alleged that she was informed for the first time that her monthly payment would be $724.00 at the First Closing.

At the First Closing, Plaintiff noticed that two companies named Prime Professionals and Process Works were receiving over $10,000.00 from the loan proceeds and asked Caldwell about them. Caldwell told Plaintiff that the payments to Prime Professionals and Process Works were

for taxes. Plaintiff knew that the back taxes she owed for the property were under $5,000.00. Plaintiff testified that Caldwell told her The Loan Store had to take out extra money, in case the taxes were more, and that any excess would be returned to Plaintiff. Plaintiff never received any return, and pursuant to a subpoena in the prior litigation, Plaintiff discovered that the authorized signatory on the TCF Bank account for Prime Professionals was Janice Caldwell; the authorized signatory on the TCF Bank account for Process Works was Vernell Bradley.

Plaintiff signed the paperwork and proceeded with the First Closing. After the First Closing, Plaintiff spent all night and part of the next morning reviewing the loan documents. On May 26, 1999, Plaintiff cancelled the loan because of the misstatement of her income and length of employment. Plaintiff also cancelled the loan because she did not know who Prime Professional and Process Works were.

After she cancelled the First Closing, Plaintiff was stressed because she needed the money from the loan. She spoke with Caldwell about the closing, and questioned Caldwell about the misrepresentations contained in the loan documents. Caldwell told the Plaintiff not to worry about the mispresentations. Plaintiff claimed that Caldwell induced Plaintiff to re-execute the loan through various statements berating, guilting, and shaming Plaintiff for canceling after she had put in so much work, and told Plaintiff that she risked losing her home due to back taxes. After speaking with Caldwell, Plaintiff agreed to proceed with the loan.

On May 28, 1999, Plaintiff resigned the same paperwork during the Second Closing. Her brother Calvin Durham was present. Plaintiff took out a principal sum of $62,400.00, payable in five years. Caldwell did not attend the Second Closing. At the Second Closing, Plaintiff signed a letter written by her brother indicating what she was going to do with the loan proceeds.

Plaintiff claims that Bradley dictated the letter that Calvin Durham wrote, and Plaintiff did not fully understand some of the items in the letter. Plaintiff left the Second Closing with the same mixed feelings. Plaintiff used the loans she obtained to pay her property taxes, the debt to Ameritech, living expenses, food, clothing and repairs on her home.

The Loan Store thereafter sold and assigned the mortgage and note to EquiCredit. In January 2002, EquiCredit sold and assigned the mortgage and note to Alaska Seaboard Partners, L.P. ("Alaska Seaboard"). Alaska Seaboard is the current owner and holder of Plaintiff's mortgage and note. SN Servicing Corporation is the servicer of plaintiff's loan. Neither Alaska Seaboard nor SN Servicing had any role in the origination or closing of Plaintiff's mortgage loan. Neither Alaska Seaboard nor SN Servicing were or are affiliated with The Loan Store.

Plaintiff filed her initial complaint against the Loan Store in November 2000. On May 24, 2002, Plaintiff filed a Second Amended Third Party Compliant against Loan Store alleging negligence. On September 9, 2002, the Circuit Court of Cook County dismissed Plaintiff's Second Amended Compliant. On January 13, 2003, Plaintiff filed a Third Amended Third Party Complaint alleging negligent misrepresentation as an exception to the *Moorman* doctrine. Plaintiff did not replead a claim for ordinary negligence. On June 10, 2003, the Circuit Court of Cook County dismissed Plaintiff's negligent misrepresentation claim with prejudice. Plaintiff did not appeal the Order. Plaintiff then voluntarily dismissed her Third Amended Complaint on March 8, 2004. On May 25, 2004, Plaintiff filed the present Complaint in the Circuit Court of Cook County. The case was removed to this court by Co-Defendant Alaska Seaboard and SN Servicing Corporation.

II.     **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

## III. ANALYSIS

**Negligence in Hiring and Supervision**

The Loan Store moves for summary judgment of the negligence in hiring and supervision claim on the grounds of *res judicata*. The doctrine of *res judicata* requires that (1) a final judgment on the merits was rendered by a court of competent jurisdiction, (2) there is an identity of causes of action, and (3) there is an identity of parties. *Licari v. City of Chi.*, 298 F.3d 664 (7th Cir. 2002).

In the prior litigation, Plaintiff claimed that employees of Loan Store were negligent in handling the loan transaction, and Plaintiff was harmed as a result. The Loan Store was alleged to have been vicariously liable for the employees' negligence. It is uncontested that the identities of the parties and the injuries alleged are the same. Neither is it contested that there was final

judgment on the merits rendered by a court of competent jurisdiction–specifically, the Circuit Court of Cook County. When a case is removed from the state court to federal court, final decisions rendered by the state court are considered final in federal court as well. *Allen v. McCurry*, 449 U.S. 90 (U.S. 1980). Involuntary dismissals under Illinois Supreme Court Rule 273 are considered rulings on the merits unless they are based on lack of jurisdiction, improper venue, or failure to join an indispensable claim. *Downing v. Chicago Transit Auth.*, 162 Ill. 2d 70, 75 (Ill. 1994). The Cook County Circuit Court dismissed the negligence and negligent misrepresentation claims on the merits, and thus, these dismissals are considered final judgment for the purposes of *res judicata*. In the instant case, the Plaintiff claims that the harm she suffered was a result of the Loan Store's negligent hiring of the employees, who were alleged to be negligent as in the prior litigation.

The contested issue is whether there is an "identity of causes of action" between the negligence claims dismissed previously and the current negligence in hiring and supervision claim, as required by prong (2). Under Illinois law, the "transactional" test is used to determine if the same cause of action exists. *Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 637 (7th Cir. 2004). The transactional approach "views claims in factual terms, focusing only on the bounds of the transaction at issue, disregarding the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories." *Id*. There is "identity of causes of action" when "a single group of operative facts give rise to the assertion of relief." *Id*.; *River Park v. City of Highland Park*, 184 Ill. 2d 290 (Ill. 1998).

In *Garcia*, this same group of operative facts involved the decision of the EEOC Board. The Seventh circuit specifically distinguishes between the decision of the Board and the

underlying facts which led to the Board's decision. In the present case, the negligence claims in the Second and Third Amended Complaints center around negligence in the interaction between employees of The Loan Store and Plaintiff during the loan transaction, whereas the current Complaint centers around negligence in The Loan Store's hiring and screening process. These are separate causes of action arising out of separate groups of operative facts–the loan transaction itself versus the hiring process.

However, Plaintiff's negligence in hiring and supervision claim is dependent on the damage caused by the employees negligence to the Plaintiff during the loan transaction, as alleged in paragraph 72 of the Complaint. That is, Plaintiff claims that as a result of negligent hiring, the employees hired acted negligently toward Plaintiff, causing her harm. This question of employee negligence during the loan transaction was precisely the cause of action addressed by the Second and Third Complaint. In fact the language and facts alleged in paragraph 72 of the current Complaint is nearly identical to that of the negligence complaint in the Second Amended Complaint. The negligence claim in paragraph 72 against the employees is barred by *res judicata*. This claim of negligence in paragraph 72 is the harmful result of the alleged negligent hiring. Because the claim of employee negligence has already been dismissed with prejudice, there can be no finding of actionable harm arising out of the negligence in the transaction. Without suffering harm, Plaintiff cannot bring a claim against The Loan Store for negligence in hiring and supervising. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (U.S. 1992). Put differently, if the negligence of the employees has been put to rest in a manner adverse to the Plaintiff in the prior litigation, then the Loan Store cannot be liable to the Plaintiff for negligently hiring and supervising those employees as to the same claimed damages in this action.

For the foregoing reasons, summary judgment as to Plaintiff's negligence claim is granted as to all Defendants.

**HOEPA**

Defendants move for summary judgment on the grounds that Plaintiff's HOEPA claim was made outside the statute of limitations period. Under 15 U.S.C. 1640(e), all TILA actions, unless otherwise noted, must be brought within one year from the date the violation occurred. A violation occurs when the credit transaction is consummated. HOEPA, as defined under 15 U.S.C. 1602(aa), falls under this statute of limitation.

The alleged violation occurred at the closing of the loan in May 1999. Plaintiff filed her current complaint in May 2004, over five years after the violation. Plaintiff argues that, because she refiled her claims, they may relate back to her prior litigation. However, Plaintiff's initial complaint was file in November 2000. Even if the instant complaint related back to November 2000, it was still filed more than a year after the closing date of the loan in May 1999.

Plaintiff next argues that she should have the benefit of equitable tolling, because there has been fraudulent concealment. Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances. *Seitzinger v. Reading Hosp. & Med. Ctr*., 165 F.3d 236, 239 (3d Cir. 1999), *Ellis v. GMAC*, 160 F.3d 703 (11th Cir. 1998). Included in the narrow set of circumstances in which equitable tolling may be appropriate is the situation in which a defendant has actively misled the plaintiff, such that the plaintiff had no reason to file the cause of action in question. *Id.* Although this court is not bound by the decision of other circuits,

it does take their reasoning into due consideration. We find no reason to divert from the well-established case law here presented.

In the present case, Plaintiff's HOEPA claim arises if the total "points and fees" exceed 8% of the Amount Financed. In order to meet the 8% threshold, the $11,000.00 of alleged siphoned money must be included in the calculations. Further, in order for Plaintiff to allege the HOEPA claim under Plaintiff's theory, Plaintiff must have been aware of the $11,000.00 that was allegedly siphoned back to the lender. The question is when did Plaintiff have knowledge of the fraudulent activity regarding the kick-back such that equitable tolling period ended, and the statute of limitations began to run. In August 1999, Calvin Durham investigated the two addresses listed in the Liability Letters, to which the alleged siphoned money was sent. He found that they did not exist. Plaintiff then filed a HOEPA claim in November 2000. There is no evidence that new information was learned between August 1999 and November 2000 that would provide further information for a HOEPA claim. In any case, at least by November 2000, Plaintiff was on notice of facts sufficient to realize that she had a HOEPA claim. Plaintiff's current complaint was filed in May 2004. This is well outside the one year statute of limitations period. Plaintiff argues that the current complaint "relates back" to the initial complaint filed in November 2000, and thus is not time-barred. This misconstrues the federal rules, where relation back refers to the amendment of a complaint, not to a separate complaint later filed. Fed. R. of Civ. Proc. 15©; *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406 (7th Cir. 1990). As such, the relation back doctrine does not apply to this HOEPA claim.

Plaintiff argues that she did not know of the kick-back until February 2004, when she discovered the bank subpoenas showing that the siphoned money went back to Caldwell and

Bradley. Even if this is true, Plaintiff can hardly make a straight-faced argument that she did not know that she had a HOEPA claim until February 2004 when, in fact, she made a HOEPA claim in 2000. The fact that Plaintiff did not discover all of the details of the fraud until February 2004 only goes to show that the facts discovered in February 2004 were not required to put her on notice of the existence of the HOEPA claim. Based on the evidence presented, Plaintiff did not bring the HOEPA claim within a year of discovering the fraudulent activity, in violation of the one-year statute of limitations, even with the equitable tolling application. Thus, the HOEPA claim is time-barred as to all Defendants.

**Common Law Fraud**

To prevail in a fraud action in Illinois, a plaintiff must prove: (1) that the defendant made false statements of material fact, and not of opinion; (2) knowing that they were false; (3) intending that the plaintiff rely on them; (4) that plaintiff did rely; (5) that this reliance was justified; and (6) that the plaintiff was damaged thereby. *West v. Western Cas. & Sur. Co.*, 846 F.2d 387, 394 (7th Cir. 1988). The Loan Store moves for summary judgment of the common law fraud claim on the grounds that Plaintiff's reliance was not justified.

Justifiable reliance requires the court to examine all the circumstances to determine whether it was "reasonable, as a matter of prudence" for the plaintiff to further investigate. *Id*. The "crucial question is whether the plaintiff's conduct was unreasonable under the circumstances and in light of the information open to him, that the law may properly say that this loss is his own responsibility." *Id.* (internal citations omitted). Further, a plaintiff's duty to investigate is absolved "when the defendant's deliberate misrepresentations have lulled the

plaintiff into a false sense of security, or when his assurances were intended to block further inquiry." *Id*.

In the present case, Defendants claim that Plaintiff had knowledge of, and was involved in fabricating, many of the false representations. Further, Plaintiff withdrew her first application because she was afraid of getting into legal trouble; however, she signed the second application knowing that the same misrepresentations were made. The evidence supports the allegation that the Plaintiff was aware of misrepresentations in her application. The question at issue is whether The Loan Store may have "lulled the plaintiff into a false sense of security" or offered assurances intending to block further inquiry.

Plaintiff claims that she did not have an opportunity to see all the loan files containing the false documents, and that she never filled out a loan application, but rather relied on Caldwell to prepare it for her. Further, when Plaintiff expressed concerns about the information in the application, Caldwell told her not to worry and that there were "things" that the Plaintiff did not need to know about. This suggests that the Plaintiff may have been given a "false sense of security" by someone who is more experienced and with authority over the loan transaction. As such, the evidence presented leaves a genuine issue of material fact as to the extent of Plaintiff's knowledge of the false information, the extent that Plaintiff relied on Caldwell's advice, and whether Caldwell made assurances to the Plaintiff that reasonably led Plaintiff into a false sense of security. Because a reasonable jury could find for the Plaintiff based on the evidence presented thus far, summary judgment on the common law fraud claim is denied.

Alaska Seaboard asserts that they are not liable under the common law fraud claim because the assignee liability provision does not extend to non-HOEPA loans. 15 U.S.C.

1641(d)(1). Although a HOEPA claim is barred by the statute of limitations, in order to determine assignee liability, we must determine whether the loan may qualify as a HOEPA loan. As previously noted, in order for Plaintiff's loan to be a HOEPA loan, it must meet the 8% "points and fees" trigger. This trigger is met if the alleged $11,000.00 were siphoned back to the lender. 12 CFR 226.32(b)(1)(ii) (Points and fees includes all fees paid back to the broker); *Cunningham v. Equicredit Corp.*, 256 F. Supp. 2d 785 (D. Ill. 2003). There is evidence that almost $11,000.00 balance of proceeds that Caldwell told Plaintiff went to Prime Professionals and Process Works was actually funneled to accounts controlled by The Loan Store, as reflected in the TCF Bank Subpoena response. This amount was never refunded to Plaintiff. With this $11,000.00 kickback, the loan qualifies under the 8% "points and fees" trigger. There is sufficient evidence where a reasonable jury may find that this loan qualifies as a HOEPA loan.

Alaska Seaboard cites *Manufacturers & Traders Trust Co. V. Hughes*, 2003 WL 21780956 (N.D. Ill.) in arguing that in order to establish common law fraud, a party must actually have committed the fraud. However, *Hughes* is distinguishable from the present case, because there was not a HOEPA loan involved in *Hughes*. HOEPA loans are given heightened liability to discourage fraud in such cases, extending extra liability to assignees.

Alaska Seaboard further asserts that they cannot be held liable because HOEPA applicability was not apparent on the face of the relevant loan documents as required for assignee liability. 15 U.S.C. §1641(d); *Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737 (D. Ill. 2002). Plaintiff claims that the loan documents received by Alaska Seaboard included a HOEPA Notice to Assignee, and two clearly-marked HOEPA Truth in Lending Disclosure Statements showing Plaintiff as Borrower. Although Alaska Seaboard claims that it was not apparent on its

-12-

face that the "points and fees" trigger was reached, these other HOEPA documents certainly create a genuine issue of material fact as to whether a Alaska Seaboard was reasonably notified of the HOEPA loan on the face of the loan documents.

Finally, Alaska Seaboard argues that the *Moorman* doctrine, holding that tort claims are prohibited where the action arises out of contract, bars Plaintiff's common law fraud claim. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69 (Ill. 1982). As noted in this court's prior motion to dismiss opinion, mortgage contracts carry "an implied duty of professional competence" which arises "independently of a contract" and thus falls in an exception to the *Moorman* doctrine. *Ploog v. HomeSide Lending, Inc*., 209 F. Supp. 2d 863 (D. Ill. 2002). There are sufficient facts to create a genuine issue of material fact as to the common law fraud claim with liability extending to assignees under HOEPA. Because a reasonable jury could find for the Plaintiff as to the common law fraud claim, summary judgment is denied to all Defendants.

**Statute of Limitations--Common Law Fraud**

Alaska Seaboard asserts that the statute of limitations barred Plaintiff's common law fraud claim. In Illinois, there is a five year general statute of limitations for common law fraud. *Parrent v. Midwest Rug Mills, Inc*., 455 F.2d 123, 128 (7th Cir. 1972). In loan transactions, the statute of limitations commence when the loan is completed. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 815 F.2d 452 (7th Cir. 1987). In the present case, second closing of the land was made on May 28, 1999. The present Complaint, with the common law fraud claim, was filed on May 25, 2004, within the five-year statute of limitations. As such, the common law fraud claim is not barred by the statute of limitations.

**Respondeat Superior**

Defendant argue that The Loan Store cannot be held responsible for the alleged fraudulent actions of its employees under the principle of *respondeat superior*, and thus summary judgment should be granted. In order for The Loan Store to be held liable for the torts of its employees, the tort must have been committed "within the scope of that employment." *Wright v. City of Danville,* 174 Ill. 2d 391, 407 (Ill. 1996). Conduct of an employee is "within the scope of employment" if (1) it is of the kind he is employed to perform, (2) it occurs substantially within the authorized time and space limits, (3) it is actuated, at least in part, by a purpose to serve the employer, and (4) if force is intentionally used by the employee against another, the use of force is not unexpectable by the employer. Restat 2d of Agency, § 228; *Jones v. Patrick & Assocs. Detective Agency, Inc.,* 442 F.3d 533 (7th Cir. 2006). Further, an employer is laible even if the employee was acting solely for his own benefit, if the employee was authorized to make a contract on his employer's behalf and used fraud to induce the contract,. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999); *Gleason v. Seaboard A. L. R. Co.*, 278 U.S. 349 (U.S. 1929)

In the present case, Caldwell and Bradley both acted within the scope of employment. In preparing and advising the Plaintiff in her loan transaction, Caldwell and Bradley were engaged in the kind of conduct they were employed to perform as employees of The Loan Store; the alleged acts were substantially conducted within the time and space limits of employment; and the securing of the loan benefited The Loan Store. *Respondeat superior* is appropriate to the common law fraud claim.

Defendants cite state law in asserting that criminal acts of an employee may fall within the scope of employment, but "if the employee's actions are different from the type of acts he is authorized to perform or were performed purely in his own interest, he has departed from the

scope of employment." *Wright v. City of Danville,* 174 Ill. 2d 391, 407 (Ill. 1996). Further, an employer is not responsible for criminal acts which are "clearly inappropriate to or unforeseeable in the accomplishment of an authorized result." *Id*.

The acts of Caldwell and Bradley fall exactly into the acts they are authorized to do as employees; namely, conducting a loan transaction. Although fraud is inappropriate, it is not the nature of the actions (filing documents, etc.) taken that is inappropriate, but rather the alleged deceit in the actions that is inappropriate. If Defendant's reasoning were carried through, then no employer would ever be held liable for an employee's criminal act, as no criminal act would be "appropriate" or "foreseeable" by the employer; otherwise the employee would not have been hired in the first place. This is certain not reasonable nor desirable. Rather, it is the nature of the act that should be examined. In the present case, the act of filling out and filing documents is certainly appropriate conduct for The Loan Store employees, and falls within the scope of employment. As such, application of *respondeat superior* is appropriate in this case.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

Enter:

/s/David H. Coar
_____
David H. Coar
United States District Judge

**Dated: November 27, 2006**